UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    v.

DARRYL BAGBY,

      Defendant.

**DECISION AND ORDER**

15-MJ-2135

---

**I. INTRODUCTION**

On November 25, 2015, agents from the Erie County Sheriff's Office executed a state search warrant at the residence of defendant Darryl Bagby ("Bagby"). Agents found Bagby on a couch and more than $19,000 of cash under the couch cushions. Agents recovered more than eight ounces of cocaine from the residence, along with a digital scale and packing and cutting agents. Agents also recovered two rounds of ammunition from a closet. From these facts, the Government charged Bagby in a one-count complaint with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The Government also seeks pretrial detention for Bagby because, in its view, he presents a danger to the community that no combination of conditions of release can address. Bagby challenges detention on the basis that the Government has not brought a case that involves any of the circumstances listed in 18 U.S.C. § 3142(f)(1), the part of the Bail Reform Act (the "Act") that authorizes detention hearings. Without any of those circumstances in play, Bagby argues, the

Government lacks authority to seek detention on the grounds of danger.[1] The Government counters that unlawful possession of ammunition by a convicted felon constitutes a crime of violence under 18 U.S.C. § 3142(f)(1)(A), which opens the door to a detention hearing. The Government then argues that the factors under 18 U.S.C. § 3142(g) reveal clear and convincing evidence that Bagby poses a danger to the community.

The Court held detention hearings on December 4 and 11, 2015. The Court also solicited supplemental briefing from the parties to address whether the Government had authority to seek a detention hearing; the parties have focused specifically on whether possession of ammunition by a felon constitutes a crime of violence. For the reasons below, the Court finds that the Government did have authority to seek a detention hearing and to move for detention.

## II. BACKGROUND

This pre-indictment case so far involves a straightforward charge of a felon in possession of ammunition. On November 25, 2015, agents of the Erie County Sheriff's Office Narcotics Unit obtained a state court search warrant for both Bagby and his residence at 116 Bidwell Parkway in Buffalo, New York. The Court has not yet seen the state court search warrant and has no further details about it. Agents executed the warrant on the same day when it issued. At the residence, agents allegedly found Bagby sitting on a couch. The agents

---

[1] The Government has not sought detention on the basis of flight risk.

searched the couch cushions and found more than $19,000 of cash. Somewhere else within the residence, agents recovered more than eight ounces of cocaine.  Agents further recovered a digital scale and packaging and cutting agents.  Most importantly for this case, agents searched a closet within the residence and recovered two rounds of ammunition, one manufactured in Minnesota and one manufactured in Russia.

The results of the search of Bagby's residence prompted the Government to present this Court with a complaint charging Bagby as a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  The Court signed the complaint on December 1, 2015, and federal agents arrested Bagby that day. The Court held the initial appearance on December 2, 2015.  At detention hearings held on December 4 and 11, 2015, Bagby objected to the Government's motion for detention and request for a hearing.  Bagby argued that a felon in possession of ammunition does not constitute a crime of violence for purposes of 18 U.S.C. § 3142(f)(1), and that no other factors under that subsection would apply.  Without an applicable factor, according to Bagby, a detention hearing cannot even occur, which in turn would mean that Bagby categorically could not be detained on the basis of danger.  The Court allowed the parties to file supplemental briefing on the Government's authority to seek detention; they did so on December 9, 2015.  In short, the parties in their supplemental briefing

elaborated on whether possession of ammunition by a felon constitutes a crime of violence for detention purposes.

## III. DISCUSSION

### *A. Detention Hearings Generally*

A general review of how detention hearings operate under the Act will help place Bagby's arguments in context. "Upon the appearance before a judicial officer of a person charged with an offense," the Court must release a defendant on recognizance or various conditions; grant temporary detention; or order the defendant detained. 18 U.S.C. § 3142(a). "After a motion for detention has been filed, the district court must undertake a two-step inquiry. It must first determine by a preponderance of the evidence, that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice. Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." *U.S. v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (citations omitted). Detention occurs under subsection (e). "If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the

4

person before trial." *Id.* § 3142(e)(1).  Subsection (f), in turn, is the gateway for both a detention hearing and any eventual detention, and for any rebuttable presumption in favor of detention.  *See also id.* § 3142(e)(2) (describing a rebuttable presumption "[i]n a case described in subsection (f)(1) of this section"); *Friedman*, 837 F.2d at 49 ("However, the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated above [in Section 3142(f)(1)].").  Under subsection (f), the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community," but only if the case satisfies at least one condition listed in the subsection.  Of the conditions listed, three of them are potentially relevant:

- A case that "involves a crime of violence"—*id.* § 3142(f)(1)(A);
- A case that "involves any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses"—*id.* § 3142(f)(1)(D); and

- A case that "involves any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon"—*id.* § 3142(f)(1)(E).

Although the parties have made some comments about the latter two factors, the Court here will focus on Subsection 3142(f)(1)(A) because that is where the parties directed most of their energy.

For important reasons that will become apparent below, the Court notes that all three conditions above, including Subsection 3142(f)(1)(A), use the word "involve." Subsection 3142(a) states that the whole bail process begins when a defendant is "charged with *an* offense" (emphasis added). Subsection 3142(f), while tightening the Venn diagram circle of possible offenses to "crimes of violence," loosens the relationship between a defendant and a crime of violence from a formal charging to an involvement. What does "involve" mean? The Second Circuit appears not to have addressed the issue directly. The Second Circuit has held that "a formal charge" is required before the Government can assert any rebuttable presumption in favor of detention, *see U.S. v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985), but that holding merely affirms the Court's statement above that *charging* a defendant with *an* offense starts the bail process generally. *But see U.S. v. Barnett*, No. 5:03-CR-243(NAM), 2003 WL 22143710, at *9 (N.D.N.Y. Sept. 17, 2003) (interpreting *Chimurenga* to mean that

6

the entire Act "is limited to the crimes charged"). As quoted above, the Second Circuit also held in *Friedman* that the Act does not permit detention without an indictment for the offenses enumerated in Subsection 3142(f), but that discussion was not limited to crimes of violence and seems like more of a general affirmation of Subsection 3142(a). In a more direct discussion of Subsection 3142(f) and crimes of violence, the Second Circuit completely omitted the word "involve" and thus gave it no interpretation, at least within the context of that subsection. *See U.S. v. Dillard*, 214 F.3d 88, 91 (2d Cir. 2000).

In the absence of direct Second Circuit guidance on the meaning of "involve" in Subsection 3142(f), the Court will interpret the express language of the Act as creating a two-step approach to detention. Under Subsection 3142(a)—which, incidentally, is labeled "In general"—the Act does not come into play in a case at all without a formal charge of *an* offense, meaning a violation of an explicit portion of U.S. Code. If a formal charge puts the Act into play then a court will consider whether a case "involves" one of the factors in Subsection 3142(f) and thus allows for a detention hearing. For the factor involving a crime of violence, "it is not necessary that the *charged offense* be a crime of violence; only that the case involve a crime of violence or any one or more of the § 3142(f) factors. But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial." *U.S. v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992); *accord U.S. v. Zaccaria*, 347 F. App'x 984, 986 (5th Cir.

2009) (unpublished decision) (reversing an order of detention where "the Government did not show any nexus between [defendant's] charged offense . . . and any other offense in the superseding indictment").  This logic can extend to any factor under Subsection 3142(f).  Here, the Court will proceed to assess whether the Government has established, by a preponderance of the evidence, a factual nexus between the charged offense of a felon in possession of two rounds of ammunition in violation of 18 U.S.C. § 922(g)(1); and a crime of violence under Subsection 3142(f)(1)(A).

### B. Does Possession of Ammunition by a Felon Constitute a Crime of Violence?

With the appropriate analytical framework in place, the Court now proceeds to Bagby's arguments and Subsection 3142(f)(1)(A).  As explained above, Bagby has argued that the Government cannot seek detention here because the charge of a felon in possession of ammunition is not a crime of violence.  There are two issues underlying this argument.  The first issue is whether a felon in possession of ammunition falls under 18 U.S.C. § 922(g)(1).  The second issue then would be whether a violation of Section 922(g)(1) constitutes a crime of violence—or, given the Court's analysis above, whether the Government has shown by preponderance of the evidence that a factual nexus exists between the crime charged and conduct that would constitute a crime of violence.

8

The answer to the first issue is straightforward and starts with the express language of the statute. "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Bagby has four New York convictions in his criminal history: Criminal Possession of a Controlled Substance in the 5th Degree under N.Y. Penal Law § 220.06, a class D felony punishable by up to seven years of imprisonment per N.Y. Penal Law § 70.00(2)(d); an identical CPCS-5th conviction two years later; Attempted CPCS-5th under N.Y. Penal Law §§ 110.00 and 220.06, a class E felony punishable by up to four years of imprisonment per N.Y. Penal Law § 70.00(2)(e); and Attempted Criminal Possession of a Narcotic Drug in the 4th Degree under N.Y. Penal Law §§ 110.00 and 220.09, a class D felony again punishable by up to seven years of imprisonment. By proffer and through the complaint itself, the Government has submitted information indicating that one of the rounds of ammunition was manufactured in from Minnesota and one in Russia, thus establishing a nexus to interstate and foreign commerce. Without prejudice to future arguments during further pretrial proceedings, Bagby has not yet challenged the Government's assertions that he "received" or "possessed" the ammunition within the meaning

of Section 922(g)(1).  For bail purposes, therefore, the Government has satisfied the elements necessary to charge Bagby with a violation of Section 922(g)(1).

The second issue requires a more complex analysis.  Under the Act, and excluding one provision not relevant here, "the term 'crime of violence' means (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or] (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 3156(a)(4). "Clauses (A) and (B) must be considered in tandem.  Clause (A) covers offenses that fall within the conventional notion of a crime of violence—any offense of which an element actually involves the use or threat of force.  Clause (B) is clearly intended to cast a wider net.  It specifies at the outset that it relates to 'any other offense'—'other' meaning other than the conventional crimes of violence specified in clause (A).  It is directed at the offense that does not necessarily involve violence, but 'by its nature involves a substantial risk that physical force . . . may be used in the course of committing the offense.' § 3156(a)(4)(B).  This clause speaks to offenses that give rise to a possibility, rather than a certainty, that force may be used.  This is clear from its use of the terms 'substantial *risk* that physical force . . . *may* be used.'  *Id.* (emphasis added).  Force need not be an inevitable concomitant of the offense . . . .  We will assume without deciding,

10

for purposes of this opinion, that the use or risk of violence must result from the categorical nature of the offense and that the statute would not be satisfied where a defendant used violence in the commission of an offense whose nature ordinarily does not give rise to a substantial risk of violence." *Dillard*, 214 F.3d at 92.

*Dillard*, however, involved a firearm while Bagby's case does not. Some evidence of a firearm also influenced the conclusion in *U.S. v. Nealy*, No. 3:12-CR-154 RNC, 2012 WL 6004213 (D. Conn. Nov. 30, 2012), that possession of ammunition constitutes a crime of violence. The court in *U.S. v. Carswell*, 144 F. Supp. 2d 123 (N.D.N.Y. 2001), at least had information that "Carswell, a convicted two-time, violent felon, illegally possessed ammunition which, in fact, served as a precursor to his using the ammunition to load a shotgun and discharge it into an innocent victim's apartment. Those facts amply demonstrate that ammunition possession by convicted felons carries the same inherent risk as does gun possession." *Carswell*, 144 F. Supp. 2d at 133. In contrast, the Court here, as of now, has no information from the complaint about use of a firearm. The Government in the complaint states only that Erie County Sheriffs executed a state search warrant at Bagby's residence and found the ammunition, $19,000 of cash under the cushions of the couch on which Bagby sat, and eight ounces of cocaine along with a digital scale and packing and cutting agents. The only suggestion of firearms came at the detention hearings and in the Government's

supplemental briefing, when the Government described how Buffalo police observed known gang members leave Bagby's residence immediately before the execution of the search warrant, and how a traffic stop of those gang members yielded two firearms under the passenger seat of the vehicle. Taking the complaint at face value, however, the Court has to conclude that Bagby himself did not possess a firearm. If the Court tried to follow the analysis from *Dillard*, *Nealy*, and *Carswell* then it would have to assess, in categorical fashion, whether two bullets in a closet, in a house with no firearm, carries the same inherent risk of violence as firearm possession and use.

Ultimately, the Court does not have to reach the question of inherent risk because it returns to its earlier analysis of the word "involve" and the ability under the Act to look at factual nexus. "Many courts have grappled with the similar question of whether being a felon in possession of a firearm constitutes a crime of violence for purposes of the Bail Reform Act of 1984 . . . . On the other hand, the question of whether a felon in possession of *ammunition alone* may be considered a crime of violence has been raised less frequently." *U.S. v. Le*, No. 03-10051-01-WEB, 2003 WL 21659657, at *1 (D. Kan. Apr. 10, 2003) (citations omitted). "Regardless, the court need not decide that matter because § 3142(f)(1) does not expressly limit consideration to the charged offense. On the contrary, § 3142(f)(1)(A) focuses on whether the case '*involves* a crime of violence.' *Id.* (emphasis added). Had Congress intended to limit the court's

12

consideration to the charged offense, it would have said so. *See, e.g.,* 18 U.S.C. § 3142(g)(1) (expressly addressing the 'offense charged'). Accordingly, the court may inquire into the circumstances surrounding the charged offense. So long as some nexus exists between the charged offense and a crime of violence, the case involves a crime of violence for purposes of § 3142(f)(1)(A)." *Le*, 2003 WL 21659657, at *1–2 (citation omitted). Here, state law enforcement agents found Bagby sitting on a couch with over $19,000 of cash hidden in its cushions. The Government proffered at the detention hearing that Bagby has been unemployed for seven years. Agents also found over eight ounces of cocaine, together with a digital scale and packing and cutting agents. The Court thus would be reasonable to infer that the ammunition found in Bagby's residence, coupled with the information about the traffic stop, could be associated with violent efforts to protect large amounts of narcotics and cash. *Cf. U.S. v. Mitten*, 592 F.3d 767, 778 (7th Cir. 2010) ("Even if the jury heard no evidence that Mitten sold drugs at the apartment, it did know that more than $6,000 worth of drugs and additional money was in the apartment on the day the warrant was executed. Drug dealers deal with people who are often desperate and violent. They cannot rely upon local law enforcement to protect their illegal product or profits."); *U.S. v. Grogins*, 163 F.3d 795, 799 (4th Cir. 1998) ("[T]he connection between illegal drug operations and guns in our society is a tight one.") (citations omitted). Such an inference would be consistent with two separate charges that Bagby faced in

13

2005 in Buffalo City Court. Twice that year, Bagby faced charges of third-degree Criminal Possession of a Loaded Firearm. Each time, Bagby pled guilty to charges not involving firearms, but the occurrence of the charges on two independent occasions suggests that Bagby is not unfamiliar with the use of firearms to protect drug transactions. Together, the circumstances of Bagby's arrest and criminal history suffice to create, by preponderance of the evidence, a factual nexus to a crime of violence involving firearms. The evidence obviously would have to be much stronger to introduce any discussion of firearms at trial, but it suffices for now to authorize the Government to seek a detention hearing.

The Court last week set a return date of December 15, 2015 at 2:00 PM to present a resolution of Bagby's arguments about Subsection 3142(f)(1)(A). This Decision and Order resolves those arguments, but the Court will keep tomorrow's date on the calendar to give Bagby a chance to argue more fully the detention factors under Section 3142(g) and possible bail conditions.

## IV. CONCLUSION

For all the foregoing reasons, the Court finds that the Government properly moved for detention and sought a detention hearing in this case.

SO ORDERED.

                                                        _/s Hugh B. Scott_
                                                        HONORABLE HUGH B. SCOTT
                                                        UNITED STATES MAGISTRATE JUDGE

DATED: December 14, 2015